UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

**RAMIRO BELTRAN**, *et al.*,
        Plaintiffs,                Case No. 13-cv-1043-LA
v.
**MAXFIELD'S, LLC**, *et al.*,
        **Defendants.**

**PLAINTIFF'S REPLY TO DEFENDANTS'
PROPOSED FINDINGS OF FACT**

Pursuant to Civ. L. R. 56(b)(3)(B), Plaintiff submits the following Reply to Defendants' Proposed Findings of Fact:

1.    Bussers and dishwashers other than Beltran were paid a take-home wage of $7.00 per hour in cash, which was intended to be equal to or greater than minimum wage after withholding.

**RESPONSE**: Objection, Defendants have failed to cite to any materials in the record pursuant to FED.R.CIV.P. 56(c)(1)(A) to support this factual assertion. Dispute. Plaintiff do not dispute that Maxfield's claims it paid its bussers and dishwashers were paid $7.00 per hour. Maxfield's claims that Beltran was paid $7.00 per hour until May 21, 2012. (Zarmakoupis Dep., ECF No. 28-4 at 121:12-19.) There is a dispute what the bussers and dishwashers were paid per hour, but it is not disputed that it was less than $7.25 per hour. (Beltran Decl., ECF No. 39, ¶¶ 5-6; Coto Decl., ECF No. 45, ¶¶ 5, 6; Santiago Decl., ECF No. 41, ¶¶ 5, 6; A. Alvarez Decl., ECF No. 42, ¶¶ 5, 6; Manuel Decl., ECF No. 44, ¶¶ 5, 6; Mazaba Decl., ECF No. 47, ¶¶ 5,

6; M. Alvarez Decl., ECF No. 43, ¶¶ 5, 6; Sosa Decl., ECF No. 46, ¶¶ 5, 6.) Maxfield's did not withhold taxes from its bussers and dishwashers. (Zarmakoupis Dep., ECF No. 28-4, at 100:23-101:4.)

2. Daniel Santiago worked as a busser for Maxfield's LLC from approximately August 20, 2012 to February 18, 2013.

**RESPONSE**: Objection, Defendants have failed to cite to any materials in the record pursuant to FED.R.CIV.P. 56(c)(1)(A) to support this factual assertion. Dispute. For purposes of this Motion for Summary Judgment only, Plaintiff does not dispute this proposed finding of fact.

3. Agueda Sosa is listed as "Angela" or "Angie" in Maxfield's payroll records.

**RESPONSE**: Objection, Defendants have failed to cite to any materials in the record pursuant to FED.R.CIV.P. 56(c)(1)(A) to support this factual assertion. For purposes of this Motion for Summary Judgment only, Plaintiff does not dispute this proposed finding of fact.

4. Sosa worked for Maxfield's LLC from prior to September 17, 2010 (the statute of limitations applicable to her) until approximately May 30, 2011.

**RESPONSE**: Objection, Defendants have failed to cite to any materials in the record pursuant to FED.R.CIV.P. 56(c)(1)(A) to support this factual assertion. For purposes of this Motion for Summary Judgment only, Plaintiff does not dispute this proposed finding of fact.

5. In all but four workweeks, Santiago worked 40 hours or less.

**RESPONSE**: Objection, Defendants have failed to cite to any materials in the record pursuant to FED.R.CIV.P. 56(c)(1)(A) to support this factual assertion. For purposes of this Motion for Summary Judgment only, Plaintiff does not dispute this proposed finding of fact.

6. Sosa worked approximately 50 hours most weeks, with some variations from week to week.

**RESPONSE**: Objection, Defendants have failed to cite to any materials in the record pursuant to FED.R.CIV.P. 56(c)(1)(A) to support this factual assertion. For purposes of this Motion for Summary Judgment only, Plaintiff does not dispute this proposed finding of fact.

7. Cooks, busboys, and dishwashers do not punch in and out for breaks, including duty-free meal breaks lasting 30 minutes or more. They have received compensation for time that is not spent performing work.

**RESPONSE**: Objection, Defendants have failed to cite to any materials in the record pursuant to FED.R.CIV.P. 56(c)(1)(A) to support this factual assertion. Dispute. Maxfield's did not take deductions from its employees' hours worked for unpaid breaks. (Zarmakoupis Dep., ECF No. 28-4, at 102:11-20.)

8. Additionally, as part of their compensation, cooks, busboys, and dishwashers including all Plaintiffs were permitted to eat food from the restaurant kitchen without a deduction from their take-home pay. Depending on when the employees were scheduled, they could eat two meals a day (breakfast and lunch),

as well as drink unlimited beverages without charge.

> **RESPONSE**: Objection, Defendants have failed to cite to any materials in the record pursuant to FED.R.CIV.P. 56(c)(1)(A) to support this factual assertion. Dispute. Maxfield's did not deduct from its employees compensation for the cost of meals eaten. (Zarmakoupis Dep., ECF No. 28-4 at 113:5-12.)

9. Ramiro Beltran's weekly take-home pay varied based on the number of hours worked, and in no week was he paid $280. (Zarmakoupis Dep., ECF No. 28-4, at 121:12-19; Ex. 7 to Zarmakoupis Dep., ECF No. 28-5, at 4-5.)

> **RESPONSE**: Dispute. (Beltran Decl., ECF No. 39, ¶¶ 5-6.)

10. Beltran worked varying numbers of hours per week, usually significantly less than 60. (Ex. 7 to Zarmakoupis Dep., ECF No. 28-5, at 4-5.)

> **RESPONSE**: Dispute. (Beltran Decl., ECF No. 39, ¶¶ 5-6.)

11. Mauricio Coto was paid an hourly rate. (Zarmakoupis Dep., ECF No. 28-4, at 73:18-19.)

> **RESPONSE**: Dispute. (Coto Decl., ECF No. 45, ¶¶ 5, 6.)

12. Coto's hours varied, and he primarily worked less than 40 hours per week. (Ex. 7 to Zarmakoupis Dep., ECF No. 28-5, at 1.)

> **RESPONSE**: Dispute. (Coto Decl., ECF No. 45, ¶¶ 5, 6.)

13. Francisco Perez requested to be paid $450 for 50 hours of work per week. However, Perez was paid varying amounts per week based on an hourly rate for hours worked. (Ex. 7 to Zarmakoupis Dep., ECF No. 28-5, at 13-14.)

**RESPONSE**: Dispute. (Perez Decl., ECF No. 40, ¶¶ 5-7.)

14. Perez worked varying hours each week, generally under 50. (Ex. 7 to Zarmakoupis Dep., ECF No. 28-5, at 13-14.)

**RESPONSE**: Dispute. (Perez Decl., ECF No. 40, ¶¶ 5-7.)

15. Alfredo Alvarez was paid an hourly rate. (Ex. 7 to Zarmakoupis Dep., ECF No. 28-5 at 2-3; Zarmakoupis Dep., ECF No. 28-4, at 74:24-75:9.)

**RESPONSE**: Dispute. (A. Alvarez Decl., ECF No. 42, ¶¶ 5, 6.)

16. Alfredo Alvarez worked approximately 50 hours each week, with some variation. (Ex. 7 to Zarmakoupis Dep., ECF No. 28-5 at 2-3.)

**RESPONSE**: Dispute. (A. Alvarez Decl., ECF No. 42, ¶¶ 5, 6.)

17. Margarito Morales Rivas was paid an hourly wage and overtime. (Zarmakoupis Dep., ECF No. 28-4, at 61:22-62:19.)

**RESPONSE**: Dispute. (Rivas Decl., ECF No. 48, ¶¶ 5, 6.)

18. While Rivas typically worked approximately 60 hours per week, his weekly hours varied on occasion. (Ex. 7 to Zarmakoupis Dep., ECF No. 28-5 at 10-12.)

**RESPONSE**: Dispute. (Rivas Decl., ECF No. 48, ¶¶ 5, 6; ECF No. 28-5, at 10-12.)

19. Rivas' regular rate was $8.75 per hour, and he received 40 hours of regular pay, or $350, by paycheck. (Zarmakoupis Dep., ECF No. 28-4, at 62:1-21.)

**RESPONSE**: Dispute. (Rivas Decl., ECF No. 48, ¶¶ 5, 6; ECF No. 28-5, at 10-12.) An employee's regular rate, as used in the FLSA, is determined by the

total compensation paid in a workweek, divided by the hours worked.

20.   Rivas received overtime compensation in cash. The amount of overtime varied from week to week but worked out to at least $13.13 per hour, or time-and-a-half based on a regular rate of $8.75. (Ex. 7 to Zarmakoupis Dep., ECF No. 28-5 at10-12; Zarmakoupis Dep. ,ECF No. 28-4 at 62:17-24.)

**RESPONSE**: Dispute. Maxfield's records (ECF No. 28-5, at 10-12) establish that Rivas was paid $11.00 per hour from 9/13/09 to 10/3/10 and $13.00 per hour thereafter. (ECF No. 28-5, at 10-12.) Maxfield's corporate designee testified that Maxfield's paid $8.75 per hour for hours under forty, $13.13 for hours over forty, and extra compensation every week. (Zarmakoupis Dep., ECF No. 28-5, at 104:8.11.) Maxfield's corporate designee testified that he would increase or decrease Rivas's compensation at a set hourly rate of $13.00 per hour. (Zarmakoupis Dep., ECF No. 28-5, at 104:7-21.) If Rivas worked more hours, he was paid $13.00 more, if he worked less hours, he was paid $13.00 less. (Zarmakoupis Dep., ECF No. 28-5, at 104:7-21.) When Maxfield's attempted to determine the number of hours worked from its records of the hours worked, Maxfield's divided the compensation paid Rivas by either $11.00 or $13.00 per hour. (Zarmakoupis Dep., ECF No. 28-5, at 152:21-127:20; 169:16-170:2.)

21.   Erick Manuel was paid an hourly rate. (Zarmakoupis Dep., ECF No. 28-4, at 74:1-8.)

**RESPONSE**: Dispute. (Manuel Decl., ECF No. 44, ¶¶ 5, 6.)

22. Manuel worked varying numbers of hours each week, most commonly between 42.5 and 44. (Ex. 7 to Zarmakoupis Dep., ECF No. 28-5 at 9.)

**RESPONSE**: Dispute. (Manuel Decl., ECF No. 44, ¶¶ 5, 6.)

23. Miguel Mazaba was paid an hourly rate. (Zarmakoupis Dep., ECF No. 28-4, at 73:9-12.)

**RESPONSE**: Dispute. (Mazaba Decl., ECF No. 47, ¶¶ 5, 6.)

24. Mazaba worked varying numbers of hours each week. (Ex. 7 to Zarmakoupis Dep., ECF No. 28-5 at 15.)

**RESPONSE**: Dispute. (Mazaba Decl., ECF No. 47, ¶¶ 5, 6.)

25. Miguel Alvarez was paid an hourly rate. (Zarmakoupis Dep., ECF No. 28-4, at 122:7-8.)

**RESPONSE**: Dispute. (M. Alvarez Decl., ECF No. 43, ¶¶ 5, 6.)

26. The weekly payroll records of Maxfield's LLC are contained in a black notebook maintained in the ordinary course of business. (Zarmakoupis Dep. ECF No. 28-4, at 85:1-2; 89:6-7; Zarmakoupis Decl. ¶ 2.)

**RESPONSE**: For the purpose of this Motion for Summary Judgment, Plaintiff does not dispute that Maxfield's claims the black notebook is their payroll records. Dispute that the book accurately reflects the compensation received by Beltran and the Opt-In Plaintiffs. (Beltran Decl., ECF No. 39, ¶¶ 5-6; Coto Decl., ECF No. 45, ¶¶ 5, 6; Santiago Decl., ECF No. 41, ¶¶ 5, 6; A. Alvarez Decl., ECF No. 42, ¶¶ 5, 6; Manuel Decl., ECF No. 44, ¶¶ 5, 6; Mazaba Decl., ECF No. 47, ¶¶ 5, 6; M. Alvarez Decl., ECF No. 43, ¶¶ 5, 6;

Sosa Decl., ECF No. 46, ¶¶ 5, 6; Rivas Decl., ECF No. 48, ¶¶ 5, 6; Perez Decl., ECF No. 40, ¶¶ 5-7.)

27. Weekly hours worked by each employee can be easily determined by dividing the amount of pay by the hourly wage received. (Zarmakoupis Dep. ECF No. 28-4, at 119:16-19, 124:19-21; 131:18-24; *generally* Ex. 7 to Zarmakoupis Dep., ECF No. 28-5.)

> **RESPONSE**: For the purpose of this Motion for Summary Judgment, Plaintiff does not dispute that Maxfield's claims that it can determine the number of hours worked using the black notebook. Dispute that the book accurately reflects the hours worked by Beltran and the Opt-In Plaintiffs. (Beltran Decl., ECF No. 39, ¶¶ 5-6; Coto Decl., ECF No. 45, ¶¶ 5, 6; Santiago Decl., ECF No. 41, ¶¶ 5, 6; A. Alvarez Decl., ECF No. 42, ¶¶ 5, 6; Manuel Decl., ECF No. 44, ¶¶ 5, 6; Mazaba Decl., ECF No. 47, ¶¶ 5, 6; M. Alvarez Decl., ECF No. 43, ¶¶ 5, 6; Sosa Decl., ECF No. 46, ¶¶ 5, 6; Rivas Decl., ECF No. 48, ¶¶ 5, 6; Perez Decl., ECF No. 40, ¶¶ 5-7.)

28. If the Plaintiffs receiving $7.00 per hour in take-home pay had been paid by check, they would have taken home roughly $6.70 per hour after withholding. (Zarmakoupis Dep. ECF No. 28-4, at 163:15-19.)

> **RESPONSE**: Dispute. Plaintiff do not dispute that Maxfield's claims it paid its bussers and dishwashers were paid $7.00 per hour. There is a dispute what the bussers and dishwashers were paid per hour, but it is not disputed that it was less than $7.25 per hour. (Beltran Decl., ECF No. 39, ¶¶ 5-6; Coto

Decl., ECF No. 45, ¶¶ 5, 6; Santiago Decl., ECF No. 41, ¶¶ 5, 6; A. Alvarez Decl., ECF No. 42, ¶¶ 5, 6; Manuel Decl., ECF No. 44, ¶¶ 5, 6; Mazaba Decl., ECF No. 47, ¶¶ 5, 6; M. Alvarez Decl., ECF No. 43, ¶¶ 5, 6; Sosa Decl., ECF No. 46, ¶¶ 5, 6.) Maxfield's did not withhold taxes from its bussers and dishwashers. (Zarmakoupis Dep., ECF No. 28-4, at 100:23-101:4.)

Dated this 10th day of November, 2014.

Respectfully submitted,

 s/ LARRY A. JOHNSON
Larry A. Johnson, SBN 1056619
ljohnson@hq-law.com
Summer H. Murshid, SBN 1075404
smurshid@hq-law.com
Michele Sumara, SBN 1010181
msumara@hq-law.com

**Hawks Quindel, S.C.**
222 E Erie Street, Suite 210
Milwaukee, WI 53202
(414) 271-8650 (office)
(414) 271-8442 (facsimile)

**Attorneys for Plaintiff**