# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**RAMIRO BELTRAN, individually and on behalf of all others similarly situated,**
       **Plaintiff,**

    v.                                                        **Case No. 13-C-1043**

**MAXFIELD'S, LLC, et al.,**
       **Defendants.**

---

## DECISION AND ORDER

Ramiro Beltran commenced this collective action under the Fair Labor Standards Act ("FLSA") and state law on behalf of himself and other persons employed at Maxfield's Pancake House, a restaurant located in Milwaukee, Wisconsin. The defendants are Maxfield's, LLC, which is the entity that operates the restaurant, and Gus Zarmakoupis, the owner of Maxfield's LLC and manager of the restaurant; I will refer to them collectively as "Maxfield's." After this case was certified as a collective action, nine individuals opted in as plaintiffs. Two of the plaintiffs were dishwashers at Maxfield's, six (including Beltran) were bussers, and two were cooks. The dishwashers and bussers allege that Maxfield's paid them less than the minimum wage of $7.25 and also failed to pay them overtime wages of at least time and one-half for hours in excess of 40 per week. The cooks allege that Maxfield's failed to pay them overtime wages. Before me now is the plaintiffs' motion for partial summary judgment on issues relating to liability.[1]

---

[1] In addition to their claims under FLSA, the plaintiffs assert claims under state wage-and-hour laws. However, those claims are largely identical to their claims under FLSA, and the parties have not highlighted any differences that are relevant to the issues presented by the plaintiffs' motion for partial summary judgment. Therefore, for purposes of this decision, I will ignore the state law claims.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I take the evidence in the light most favorable to the non-moving party and may grant the motion only if no reasonable juror could find for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 255 (1986).

The parties agree that all plaintiffs were covered by FLSA and entitled to a minimum wage of $7.25 and to an overtime wage of time and one-half for all hours worked over 40 per week. Maxfield's does not dispute that it failed to pay overtime wages to the bussers and dishwashers.[2] Maxfield's also does not dispute that it failed to pay overtime wages to one of the two cooks, Francisco Perez.[3] However, Maxfield's contends that it paid overtime to the other cook, Margarito Morales Rivas. Rivas seeks summary judgment on the question of whether Maxfield's method of compensating him resulted in his receiving time and one-half for hours worked in excess of 40 per week. Maxfield's also contends that it complied with FLSA's minimum-wage obligations to the bussers and dishwashers by paying them $7.00 in cash and allowing them to eat free meals during their shifts. The bussers and dishwashers seek summary judgment on the question of whether Maxfield's

---

[2]The parties agree that there is a genuine factual dispute over the number of hours the bussers and dishwashers worked each week during the relevant time period. Thus, although it is agreed that the bussers and dishwashers were not paid overtime wages for hours in excess of 40 per week, the number of overtime hours worked each week by each busser and dishwasher remains for determination at trial.

[3]Again, however, there is a triable issue as to the number of overtime hours Perez worked during the relevant time period.

practices of paying $7.00 in cash and allowing free meals resulted in compliance with FLSA's minimum-wage requirements.[4]

Maxfield's contends that paying the bussers and dishwashers $7.00 per hour in cash did not violate FLSA's minimum-wage requirements because the bussers and dishwashers ended up "taking home" more of their earnings than they would have had the defendants paid them $7.25 by check and then deducted the appropriate withholdings for taxes. This argument clearly fails. Under the FLSA regulations, an employer is entitled to include as wages amounts deducted from an employee's pay for employee-owed taxes only if the employer actually collects the taxes and forwards them to the appropriate governmental agencies. See 29 C.F.R. § 531.38. Here, it is undisputed that Maxfield's did not actually collect $0.25 per hour for employee-owed taxes and then forward that amount to the appropriate governmental agencies. Rather, the defendants simply kept the additional $0.25 per hour for themselves. Thus, the defendants are not entitled to include any amounts that could have been deducted for taxes as wages paid to the bussers and dishwashers.[5]

The defendants also suggest that because the bussers and dishwashers took home $7.00 per hour but would have taken home less than that had Maxfield's paid minimum

---

[4]The parties agree that certain issues relating to the minimum-wage claims of the bussers and dishwashers cannot be resolved on summary judgment, including the exact number of hours worked by each busser and dishwasher and whether Maxfield's in fact paid the bussers and dishwashers $7.00 per hour in cash. The parties have differing views on the amount of hours worked by each busser and dishwasher, and the bussers and dishwashers claim that Maxfield's paid them even less than $7.00 per hour.

[5]Although the discussion in the text pertains to the wages of bussers and dishwashers, it also pertains to any argument by Maxfield's that it is entitled to a credit for taxes with respect to any cash payments made to the cooks.

wage and withheld the appropriate taxes, the bussers and dishwashers could not have been injured by Maxfield's failure to pay minimum wages and therefore lack Article III standing to sue. See Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). This argument also fails. Maxfield's failure to withhold, for example, state and federal income taxes from its employees' paychecks did not excuse the employees from having to pay those taxes, and thus the employees were not entitled to keep the take-home pay that should have been withheld. Also, had Maxfield's actually deducted the taxes and forwarded them to the government, the bussers and dishwashers might have been able to reclaim some or all of the withholdings in the form of income-tax refunds. Thus, the bussers and dishwashers surely were injured by Maxfield's failure to pay them minimum wage. In any event, FLSA entitles the plaintiffs to receive $7.25 per hour calculated in the appropriate manner. As discussed above, FLSA allows amounts deducted from wages for taxes to be included in the total wages paid to the employee only if the employer forwards the deductions to the government. Here, Maxfield's did not forward any deductions to the government, and so FLSA gives the bussers and dishwashers a right to recover from the defendants at least $0.25 per hour regardless of whether the defendants' wrongdoing conferred a tax benefit of greater than $0.25 per hour on the plaintiffs. See 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . .") (emphasis added). The bussers and dishwashers have standing to sue for this amount.

Next, Maxfield's notes that it provided its employees with free meals from the restaurant kitchen during their shifts, claims that the value of those meals should be

4

included as wages paid to bussers and dishwashers, and implies that the value of those meals makes up for the at least $0.25 per hour difference between minimum wage and the amount Maxfield's paid its bussers and dishwashers in cash. Under FLSA, an employer may include as wages the "reasonable cost to the employer" of furnishing employee meals. See 29 C.F.R. §§ 531.32(c); 531.33. However, the employer may not include the cost of meals as wages if it has failed to maintain adequate records to substantiate that cost. 29 C.F.R. § 516.27(a); Herman v. Collis Foods, Inc., 176 F.3d 912, 914 (6th Cir. 1999); Morgan v. SpeakEasy, LLC, 625 F. Supp. 2d 632, 655 (N.D. Ill. 2007). Here, Maxfield's has not attempted to substantiate the reasonable cost of any meals that it provided to its employees. Therefore, the cost of meals may not be included as wages.[6]

I turn now to Rivas's claim for overtime wages. There exists a genuine factual dispute over how Rivas was compensated. Rivas claims that he was paid $550 per week for 60 hours of work, except that occasionally Maxfield's would adjust his weekly pay to account for days off or extra shifts. See Rivas Decl. ¶¶ 6–7. Maxfield's claims that Rivas was paid on an hourly basis and earned more than $550 per week. See ECF No. 28-5 at 10–12. Whether Maxfield's paid Rivas more than $550 per week is an issue for trial. However, Rivas contends that even under Maxfield's view of how he was compensated, Maxfield's failed to pay him overtime wages. Therefore, he seeks summary judgment on the issue of whether Maxfield's claimed method of compensation resulted in compliance with FLSA's overtime requirements.

---

[6]Although the discussion in the text pertains to the wages of bussers and dishwashers, it also applies to any argument by Maxfield's that it is entitled to a credit for the cost of meals when calculating whether the cooks were paid overtime compensation.

Maxfield's claims that Rivas worked approximately 60 hours per week and was paid for this time through a combination of a paycheck and cash. Rivas always received $350 per week by paycheck and an additional amount in cash that varied depending on the number of hours he worked. Maxfield's claims that the amount paid by paycheck was compensation for Rivas's first 40 hours per week at a rate of $8.75 per hour, and that the amount paid in cash was compensation for overtime. For instance, according to Maxfield's records, during the week of September 13, 2010, Rivas worked 59 hours and was paid a total of $650, $350 by paycheck and $300 in cash. ECF No. 38-5 at p. 10. Assuming that the paycheck was compensation for the first 40 hours at a rate of $8.75 per hour, Rivas would have been entitled to 19 hours of overtime at a rate of $13.13 per hour ($8.75 x 1.5), for a total of $249.47 in overtime compensation. Thus, if the $300 cash payment represented Rivas's overtime compensation, Maxfield's would have complied with its obligation to pay overtime for that week. According to Maxfield's, it always paid Rivas enough cash to cover his overtime at a rate of $13.13 per hour or higher.

Rivas does not dispute that Maxfield's paid him $350 per week by paycheck and an additional amount each week in cash. (Rivas contends that he always received $200 per week in cash. Rivas Decl. ¶ 6.) However, he claims that both the paycheck and the cash constituted compensation at his regular, non-overtime rate, and that Maxfield's never paid him any overtime wages. In Rivas's view, if what Maxfield's says about the total amount it paid him is true, his regular rate would have been $11 per hour when he began working for Maxfield's, and it would have increased to $13 per hour after he received a raise. So for the week of September 13, 2010, Rivas contends that the $650 in total compensation Maxfield's claims he received was simply compensation for 59 hours at the regular rate of

6

$11.00, rounded up to the nearest ten (59 x $11.00 = $649). If Rivas's regular rates were $11.00 or $13.00, then his overtime rates would have been $16.50 and $19.50, respectively.

To resolve this issue, I must identify Rivas's "regular rate." 29 U.S.C. § 207. The statute defines "regular rate" to include "all remuneration for employment paid to, or on behalf of, the employee," subject to certain enumerated exemptions. Id. § 207(e). One of the exemptions is for payment credited to overtime. Id. § 207(e)(5). Thus, the regular rate is "the hourly rate actually paid to the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. § 778.108 (citing Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419 (1945)). There is a statutory presumption that remuneration in any form is part of the regular rate, and thus the burden is on the employer to establish that any remuneration is overtime rather than part of the regular rate. See Madison v. Res. for Human Dev., Inc., 233 F.3d 175, 187 (3d Cir. 2000).

Generally, an employer and employee are free to negotiate the regular rate as they see fit. Younger-Reynolds, 325 U.S. at 424. However, "this freedom of contract does not include the right to compute the regular rate in a wholly unrealistic and artificial manner so as to negate the statutory purposes." Id. (quoting Walling v. Helmerich & Payne, 323 U.S. 37, 42 (1944)).[7] The regular rate "is not an arbitrary label chosen by the parties; it is an actual fact." Id. Thus, "the regular rate of pay cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee"; rather, "it must be drawn

---

[7]The statutory purposes are (1) to spread employment by placing financial pressure on the employer through the overtime pay requirement; and (2) to compensate employees for the burden of a workweek in excess of the hours fixed in the FLSA. Helmerich & Payne, 323 U.S. at 40.

7

from what happens under the employment contract." Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 464 (1948).

In the present case, the facts taken in the light most favorable to Maxfield's demonstrates that Rivas's regular rate was never $8.75, as Maxfield's contends. Although Maxfield's always gave Rivas a check for $350 every week, and $350 divided by 40 is $8.75, the amount of cash Maxfield's paid Rivas each week bore no reasonable relationship to the amount of overtime hours he worked and thus could not reasonably be deemed overtime compensation rather than part of his regular rate. For instance, for the week of September 13, 2010, Maxfield's claims it paid Rivas $300 for 19 hours of overtime. This would have amounted to an overtime rate of $15.79 ($300 divided by 19 hours), which is much greater than $13.13, which is time and one-half of $8.75. Although Maxfield's might have decided to pay overtime at a rate $15.79 rather than simply time and one-half, clearly that is not what Maxfield's did. The amount of supposed overtime compensation varied every week, and there is no consistent overtime rate. To point to just a few examples, treating the cash payments as overtime would result in an overtime rate of $14.21 for one week, $15.84 in another week, and $16.56 in a third week.[8] Moreover, it appears that beginning in October 2011 and continuing until November 2013, Maxfield's increased the amount of cash it paid to Rivas each week, even though Rivas's hours remained roughly the same as they had been prior to October 2011. See ECF No. 28-5

---

[8]These examples are from page 10 of Maxfield's summary of the compensation it claims it paid to Rivas (who in this document is identified as Margarito Morales). ECF No. 28-5. The rate of $14.21 is from line 2 in the first column of the summary ($398 in cash divided by 28 hours in excess of 40); the rate of $15.84 is from line 5 in the first column ($293 divided by 18.5); and the rate of $16.56 is from line 17 in the first column ($265 divided by 16).

at 10. Thus, it appears that Rivas received a raise in October 2011. However, Maxfield's continued to pay him only $350 per week by paycheck, and thus if Maxfield's is to be believed, it did not increase Rivas's regular rate. But if that is the case, then Maxfield's began paying Rivas overtime at rates that were severely disproportionate to his regular rate. For instance, for the week of October 10, 2011, Rivas worked 23.5 hours of overtime and Maxfield's paid him $473 in cash. If the cash were solely overtime compensation, then Rivas's overtime rate was $20.13—nearly two and one-half times Rivas's supposed regular rate of $8.75. And for the week of November 7, 2011, Rivas worked only nine hours of overtime yet was paid $287 in cash, which results in an overtime rate of $31.89—more than three and one-half times Rivas's supposed regular rate of $8.75.

      Clearly, then, treating $8.75 as Rivas's regular rate would be "wholly unrealistic and artificial." <u>Younger-Reynolds</u>, 325 U.S. at 424. Instead, what actually happened under the employment contract was that Rivas was paid a regular rate of $11.00 per hour until the week of October 10, 2011, when his regular rate was increased to $13.00. Indeed, when Zarmakoupis was asked at his deposition how he determined the number of hours Rivas had worked each week during the relevant time period, he stated that he divided the total compensation Rivas had been paid by either $11.00 or $13.00—amounts that he described as Rivas's "average hourly rate." Zarmakoupis Dep. at 81:4 to 81:10; 89:11 to 89:18; 125:21 to 127:20; 169:15 to 170:2. Thus, assuming that Maxfield's actually paid Rivas all the money it claims to have paid him, Rivas was entitled to overtime at the rate of $16.50 until October 10, 2011. After October 10, 2011, Rivas was entitled to overtime at the rate of $19.50. As Maxfield's in fact paid Rivas only $11 and $13 per hour for all of

9

his overtime hours, it is liable to Rivas for $5.50 for each hour of overtime prior to October 10th, and for $6.50 for each hour of overtime after October 10th.

The plaintiffs' motion for summary judgment raises two other issues that I must address. First, the plaintiffs contend that I can grant them summary judgment on the issue of whether Maxfield's violations of FLSA were willful. A finding of willfulness under FLSA entitles the plaintiffs to a longer statute of limitations—three years rather than two years. See 29 U.S.C. § 255(a). A violation of FLSA is willful if the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by" the Act. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). The plaintiffs contend that I can deem Maxfield's conduct willful as a matter of law because Zarmakoupis testified that he knew that FLSA required a minimum wage of $7.25 and time and one-half for hours over 40 per week yet paid the bussers and dishwashers only $7.00 and did not pay overtime compensation to any employee who worked more than 40 hours in a workweek.

I conclude that the question of willfulness is for the jury. With respect to the failure to pay minimum wage to the bussers and dishwashers: Although Zarmakoupis knew that FLSA required payment of a minimum wage of $7.25, a question of fact remains as to whether he knew or recklessly disregarded the risk that paying $7.00 in cash and providing employees with free meals without maintaining adequate records as to the cost of those meals would not satisfy his obligation to pay $7.25 per hour. With respect to the failure to pay overtime wages to the bussers and dishwashers: Zarmakoupis testified that "it just slipped his mind." Zarmakoupis Dep. at 174:20 to 174:22. Although I do not find this testimony very convincing, it is for the jury to determine whether Zarmakoupis is telling the truth when he says that he "just forgot" to pay overtime to the bussers and dishwashers.

Finally, with respect to the failure to pay overtime to Rivas, a question of fact remains as to whether Zarmakoupis knew or recklessly disregarded the risk that Maxfield's method of compensating him resulted in the failure to pay overtime wages.[9]

The remaining issue is whether summary judgment may be granted as to Maxfield's affirmative defenses. Besides the statute of limitations, which I have addressed in the context of willfulness, above, the only affirmative defenses on which Maxfield's opposes summary judgment are (1) whether the plaintiffs are claiming compensation for activities that do not constitute "work" within the meaning of FLSA, and (2) whether the plaintiffs' claims are subject to the so-called "de minimis" doctrine.

With respect to the first of these defenses, Maxfield's claims that the plaintiffs are seeking compensation for duty-free meal periods that lasted thirty minutes or more, which are not compensable under FLSA. See 29 C.F.R. § 785.19(a). However, the defendants have not pointed to evidence from which a reasonable jury could conclude that Maxfield's actually allowed any plaintiff to take a duty-free meal period lasting at least thirty minutes. The only evidence in the record is Zarmakoupis's testimony that Maxfield's does not "take money off for breaks." Zarmakoupis Dep. at 102:11 to 102:18. No evidence in the record would allow a jury to determine whether that is because the breaks were so short as to be compensable under FLSA, or whether Maxfield's simply decided to pay the plaintiffs for time that is not compensable under FLSA. Thus, Maxfield's has failed to point to a genuine issue of fact concerning whether it is entitled to a credit for non-compensable meal periods.

---

[9]The parties in their briefs do not specifically address the willfulness of Maxfield's failure to pay overtime to Perez, the other cook. Thus, I will leave this question for resolution at trial.

11

The second affirmative defense pertains to the de minimis doctrine, under which insignificant periods of time need not be included in the workweek for purposes of complying with FLSA. The doctrine stems from the Supreme Court's decision in Anderson v. Mt. Clemens Pottery Co., 238 U.S. 680, 692 (1946):

> The workweek contemplated by [FLSA] must be computed in light of the realities of the industrial world. When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

In the present case, Maxfield's notes that it is conceivable that after the jury determines the amount of hours worked by the plaintiffs and the compensation Maxfield's paid to them, the difference between what Maxfield's should have paid some plaintiff and what Maxfield's actually paid him may turn out to be insignificant. But Maxfield's does not identify any plausible scenario under which the de minimis doctrine might come into play. The plaintiffs are not seeking compensation for a "only a few seconds or minutes of work," id., but for Maxfield's protracted practice of failing to pay minimum wages and overtime compensation. Thus, summary judgment will be granted as to Maxfield's de minimis affirmative defense.

## CONCLUSION

For the reasons stated, **IT IS ORDERED** that plaintiffs' motion for partial summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that a telephonic status conference will be held on **January 12, 2015 at 11:30 a.m.** for the purpose of scheduling this matter for trial. The court will initiate the call.

Dated at Milwaukee, Wisconsin, this 12th day of December, 2014.

s/ Lynn Adelman
District Judge